AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 0 4 2015

MATTHEW J. DYKMAN
CLERK

# UNITED STATES DISTRICT COURT
for the
Judicial District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. 15mr702
Outbuilding on 8505 Dunhill Ave. SW. )
Albuquerque, New Mexico 87121 )
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Outbuilding on 8505 Dunhill Ave. SW. in Albuquerque, NM.

located in the __Judicial__ District of __New Mexico__, there is now concealed *(identify the person or describe the property to be seized)*:
Please see attached affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841 (a)(1) | Possession with intent to distribute controlled substance |

The application is based on these facts:
Please see attached Affidavit.
This Search Warrant Application and attached Affidavit have been reviewed and approved by AUSA Kimberly Brawley

☑ Continued on the attached sheet.
☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*SCY* Delayed notice not authorized.

_____
Applicant's signature

John Castleberry, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 11-04-2015

_____
Judge's signature

City and state: Albuquerque, New Mexico

U.S. Magistrate Judge Steven C. Yarbrough
Printed name and title

## AFFIDAVIT OF DEA SPECIAL AGENT JOHN CASTLEBERRY

I, Special Agent John Castleberry, United States Department of Justice, Drug Enforcement Administration (DEA), being first duly sworn state as follows:

### Introduction

1. This Affidavit is written in support of an application for a search warrant for the outbuilding on the property of **8505 Dunhill Ave. SW., Albuquerque, New Mexico, (BERNALILLO COUNTY),** location fully described in Attachment A.

2. I am currently investigating crack cocaine distribution for the Angelo BURDEX drug trafficking organization. The facts and information set forth in this Affidavit are based upon my personal knowledge obtained during this investigation, conversations with other officers, and other documents and records obtained as a result of this investigation.

### Affiant's background

3. I have been employed by the United States Department of Justice, Drug Enforcement Administration (DEA) since January 2011. Prior to employment with the DEA, I was employed as a police officer with the Florida Highway Patrol. During this time I have accumulated the following training and experience:

   (a) I graduated from the DEA Academy (Quantico, Virginia). I received approximately 19 weeks of specialized narcotics related training. The training included controlled substance identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical applications of narcotics enforcement, surveillance and electronic

monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

## Case background/relevant facts.

4. In September 2015, investigators from the Bureau of Alcohol Tobacco and Firearms (ATF) developed a confidential source with information pertaining to the Desmick SHARBER. Through thorough debriefs with the confidential source, surveillance and buy/walk operations, investigators with ATF, identified Angelo BURDEX as the principal target and crack cocaine distributor in the BURDEX DTO.

5. On October 2, 2015, a Special Agent with the ATF, acting in an undercover (UC) capacity, met with an individual identified by law enforcement as Desmick SHARBER and (an individual later identified by law enforcement as) Angelo BURDEX in a parking lot in Southeast Albuquerque, NM. The purpose of the meeting was for the ATF UC to purchase two (2) ounces of crack cocaine from SHARBER and Angelo BURDEX.

6. SHARBER asked the ATF UC "you sure you aint a cop?" and the ATF UC replied in the negative. BURDEX then reached into his pocket and pulled out two plastic bags that contained a white chunky substance consistent with crack cocaine. The ATF UC handed BURDEX a digital scale who then weighed the baggies separately. Each baggie was determined to weigh 29 grams for a total of 58 grams. The ATF UC provided BURDEX with $2,400 in cash. The unidentified male counted the money and then provided the ATF UC with the narcotics. Following the transaction, both SHARBER and BURDEX exited the vehicle, entered BURDEX's vehicle, and departed the area at a high rate of speed with BURDEX driving. The

suspected crack cocaine was field tested and tested positive for the presence of cocaine base.

7. On October 30, 2015, a federal arrest warrant was obtained for SHARBER for possession with intent to distribute a controlled substance, conspiracy with at least one other person to distribute a controlled substance, and aiding and abetting another while distributing a controlled substance.

8. On November 2, 2015, Agents conducted surveillance on SHARBER and observed SHARBER meet with Angelo BURDEX, who was driving a Ford Mustang. Agents observed the black Ford Mustang display New Mexico plate 648SJF. SHARBER entered the vehicle for a short period of time then exited the vehicle; based on your Affiant's training and experience, this interaction between SHARBER and BURDEX is consistent with a narcotics transaction. A query through the National Crime Information Center database for New Mexico plate 648SJF returned to a 1992 black Ford convertible registered to Jesse D. Burdex at 8505 Dunhill Avenue SW. in Albuquerque, New Mexico.

9. Specific law enforcement personnel involved in this operation were familiar with the BURDEX family and confirmed that Angelo BURDEX was the driver of the Ford Mustang. It should also be noted Angelo BURDEX has multiple prior felony convictions out of the State of New Mexico and multiple additional violent felony charges pending in New Mexico District Court.

10. SHARBER departed as the passenger in a vehicle and BURDEX left driving the Ford Mustang. SHARBER was later arrested and found to be in possession of approximately 58 grams of crack cocaine and a semiautomatic pistol. SHARBER

was advised of his rights per Miranda and questioned reference the incident. SHARBER stated he recently obtained the crack cocaine that was found on his person from "Angelo" at a convenience store prior to being arrested. A photograph of Angelo BURDEX was provided to the ATF UC who confirmed that Angelo BURDEX is the same person who sold him 58 grams of crack cocaine on October 2, 2015 in a parking lot in southeast Albuquerque. The crack cocaine possessed by SHARBER on November 2, 2015 field tested positive for the presence of cocaine base.

11. On November 4, 2015, U.S. Chief Magistrate Judge signed a criminal complaint for Angelo BURDEX charging him possession with intent to distribute a controlled substance, and conspiracy to distribute a controlled substance in violation of Title 21 U.S.C 841(a)(1), and Title 21 U.S.C 846.

12. On November 4, 2015, investigators contacted the Bernalillo County District Court Pretrial Services regarding the whereabouts of Angelo BURDEX. Investigators know that BURDEX currently has an ankle monitor on his person activated by Pretrial Services. The Pretrial Services lists 4501 Shepard Road NE Apt.15-3R as a current address for Angelo BURDEX. At the request of investigators working this case, Pretrial Services reviewed the GPS location for BURDEX's ankle monitor. The GPS location identified BURDEX at the southwest corner of 4501 Shepard Road NE.

13. At approximately 10:00 a.m., Detective Jerry Koppman (BCSO) contacted an employee for Arbors Apartments (4501 Shepard Road NE) regarding the location of apartment 15-3R. The employee directed Det. Koppman to the tan and brown, three

story building directly west of 4501 Shepard Rd. NE. The employee further stated Apartment 15-3R was located on the southwest corner of the building. Shortly after, your affiant walked into the apartment complex described above. At the southwest portion of the building, was a staircase. Above the staircase were the numeric 4415. Your affiant located apartment 15-3R on the third floor of the apartment complex near the southwest portion of the building.

14. At approximately 10:45 a.m., surveillance units observed a 2011 White BMW SUV arrive at the apartment complex. The 2011 BMW displayed New Mexico plate 514SDP. A query through the National Crime Information Center database for New Mexico plate 514SDP returned to a 2011 white BMW SUV registered to Sade Johnson at 300 Dorado Place SE Apt. Y4 in Albuquerque, New Mexico. Investigators associated with this case know that Angelo BURDEX was associated with the address 300 Dorado Place SE Apt. 8 in Albuquerque, NM. During a post arrest debrief, SHARBER told law enforcement that he had seen BURDEX in a white BMW SUV in the past.

15. At approximately 12:20 p.m., Angelo BURDEX observed law enforcement in the area and fled apartment 15-3R. BURDEX was subsequently encountered by law enforcement.

16. BURDEX told law enforcement officers that he stored firearm(s) and U.S. currency at a shed/ outbuilding at his grandmother's house. BURDEX further stated his grandmother resides at 8505 Dunhill Avenue SW. in Albuquerque, New Mexico. Investigators know through their investigation into the BURDEX DTO that Angelo BURDEX is associated with 8505 Dunhill Avenue SW.

17. At approximately 2:45 p.m., BURDEX fled law enforcement custody. BURDEX is currently at large with an outstanding federal warrant for the above described narcotics transactions.

18. Based on my training and experience, and on my consultation with other law enforcement officers experienced in investigations regarding conspiracy to manufacture, distribute, and possession with intent to distribute controlled substances, I have learned the following:

   a) Drug dealers often maintain records of their transactions in a manner similar to the record keeping procedures of legitimate businesses. Even after the drugs are sold, documentary records often remain for long periods of time, even years, to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers, and co-conspirators. These records can be maintained on paper, in the form of business and personal ledgers and diaries, calendars, memoranda, pay-owe sheets, IOU's, miscellaneous notes, money orders, customer lists, and telephone address books.

   b) These records can reflect names, addresses and/or telephone numbers of associates and co-conspirators, the sale and purchase of controlled substances, customer lists, and amounts of money owed to the trafficker by his customers, and by the trafficker to his suppliers.

   c) Records often indicate locations and distribution points of controlled substances, and the purchase of materials, supplies and articles used by the trafficker and co-conspirators in the distribution of controlled substances.

d) Records frequently include the identification of properties such as real property or vehicles owned, rented, leased, controlled, or otherwise utilized by the trafficker and his co-conspirators in the distribution of controlled substances. These records include property rental and ownership records such as deed of trust and lease and purchase agreements, and vehicle registration, rental and ownership information.

e) These items are stored by drug dealers on their person, in their residences, outbuildings and cars.

f) Drug dealers often travel domestically and internationally to facilitate their trafficking. Evidence of foreign and domestic travel by persons engaged in illegal drug trafficking includes travel itineraries, airline tickets, receipts related to travel such as rental car receipts, fuel receipts and hotel receipts, and passports and visas and their contents. These items are stored by drug dealers on their person, in their residences, outbuildings and cars.

g) Other evidence of transportation, ordering, possession, and sale of drugs can include the following: telephone bills to show numbers called by the drug dealers (and hence potential associates), overnight mail receipts, bank statements, deposit and withdrawal slips, savings books, investment statements, loan statements, other financial institution statements, and federal and state tax returns.

h) The above items are stored by drug dealers on their person, in their residences, outbuildings and cars. Drug dealers usually sell their product for cash. Because pound quantities can sell for thousands of dollars even at the wholesale level, dealers typically may have thousands of dollars in cash on hand both as proceeds of sales and to purchase their own supplies. In addition, drug dealers often have

other assets generated by their drug business, or purchased with cash earned, such as precious metals and stones, jewelry, real estate, vehicles, and other valuables.

i) Individuals involved in drug dealing often try to legitimize these profits from the sale of drugs. To accomplish these goals, drug traffickers utilize foreign and/or domestic banking institutions and their attendant services, real estate and businesses, both real and fictitious. They also try to secrete, transfer, and conceal the money, by (a) placing assets in names other than their own to avoid detection while maintaining control, (b) laundering money through what appears to be a legitimate business or businesses, (c) hiding the money in their homes, safes, and safety deposit boxes, or (d) using the money to buy assets which are difficult to trace. This evidence is useful in a criminal prosecution, and it also is useful in identifying real and personal property that can be seized and forfeited by the government under existing laws.

j) Evidence of significant, unexplained income of drug dealers, or for the acquisition and concealment of money and assets of drug sales, can be found on banking and investment account statements, credit card account statements, canceled checks, money orders, deposit slips, check and savings books, business and personal ledgers, accounting records, safe deposit box records and keys, federal and state tax records, rental receipts, rental agreements, utility bills, overnight mail receipts, telephone bills, loan statements records reflecting ownership of real or personal property (such as deeds of trust or vehicle registration, insurance, and ownership information), vehicle and property rental records, lease and purchase agreements, and cancelled mail.

k) The above items are typically kept by drug dealers on their person or in their residences, outbuildings and cars.

l) Documents showing who owns, occupies, or controls the location being searched also show whom is responsible for the items found on the premises, including contraband and other evidence seized. Documents and items showing the identity of the persons owning, residing in, or controlling the area being searched include, but are not limited to, utility and telephone bills, canceled envelopes and correspondence, tax returns, keys, deeds, and mortgage receipts.

m) Drug dealers often take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, and their drugs. They usually maintain these photographs and/or videos on their person, in their residences, outbuildings or cars.

n) Drug dealers often maintain firearms and ammunition on their person or in their homes, or cars to protect themselves and their drugs and their drug profits. They also may maintain indicia of firearms such as receipts for firearms and ammunition, boxes for firearms and ammunition, and instruction manuals and other documentation for firearms and ammunition.

o) As discussed above, drug dealers often conceal evidence of drug dealing in vehicles outside of their residences for ready access and to prevent detection and seizure by officers executing search warrants at their residences. This evidence, which is discussed in detail in the preceding paragraphs, includes indicia such as packaging, documents and evidence tending to show the distribution of narcotics

(such as IOU's, pay-owe sheets, ledgers, lists of names and numbers, telephone address books, et cetera).

## Conclusion

18. From the aforementioned listed facts, I believe from my training and experience that on the following described premises crack cocaine is being distributed and stored on a continuous and ongoing basis. The premises to be searched is an outbuilding on the property of 8505 Dunhill Ave. SW., Albuquerque, New Mexico, 87121 in violation of Title 21, United States Code, Section 841(a)(1). Please see Attachment A for the Subject Residence description and Attachment B which delineates a thorough list of Items/Documents to be seized, both of which are attached, fully described in Attachment A of this Affidavit. I respectfully request the issuance of a search warrant authorizing any agent of the Drug Enforcement Administration, with the assistance of other law enforcement officers, to enter and search the premises of the property described in Attachment A for items more particularly described in Attachment B, all of which are evidence of and fruits and instrumentalities of violations of Title 21, United States Code, Section 841. ~~Also to be searched are any vehicle(s) parked directly on the premises or in the street in front of or nearby or adjacent to the above Target residence, provided said vehicle(s) can be specifically connected to an occupant or permanent resident of the Target residence to be searched prior to searching said vehicle(s). I know through my training and experience that drug dealers often hide or otherwise conceal their drugs in and on vehicles~~.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

_____
John Castleberry
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 4th day of November, 2015.

_____
U.S. Magistrate Judge
Steven C. Yarbrough

## ATTACHMENT B

1. Controlled substances, in particular, cocaine, heroin, methamphetamine and/or marijuana and drug paraphernalia, including but not limited to, scales, packaging materials, items for packaging and handling drugs, and raw materials/chemicals used in drug production.

2. Large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions.

3. Any and all drug customer lists, drug records, dealers lists, or any notes containing the individual names of such persons, telephone numbers, addresses of these customers or dealers, and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, or cash received to pay for controlled substances or intended to pay for controlled substances.

4. Telephone and address books or notes containing telephone numbers and addresses of co-conspirators.

5. Telephone toll records for homes and/or businesses owned or controlled by suspected co-conspirators, or other telecommunications instruments used by them and/or their drug trafficking associates.

6. Indications of ownership or control of said premises and/or other premises used in unlawful drug trafficking activity, including but not limited to, utility bills, cancelled checks, or envelopes and deeds or leases.

7. Indications of ownership or control over any vehicles located at the place to be searched, including but not limited to, titles, registrations, gas receipts, repair bills and keys belonging to that vehicle.

8.  Cellular telephones—digital or otherwise—and bills or receipts relating to the leasing/renting of the paging devices and cellular telephones. *(Seizure, but not search, of cellular telephones authorized at this time)* *[initials]*

9.  Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received, passbooks, bank checks, safe deposit box keys, vault keys, safes and other items evidencing the obtaining, secreting and/or concealment, and or expenditures of money.

10. Any and all vehicles and/or conveyances parked within the place to be search.

11. Any and all financial or other instruments evidencing placement of assets in the names other than the names of the drug traffickers themselves.

12. Electronically stored data, computerized or written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed.

13. Photographs or video movies of the drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds.

14. Other financial records, which may include airline ticket receipts, credit card receipts, rental car receipts and luggage tags reflecting points of travel.

15. Firearms and ammunition, including but not limited to handguns, rifles, shotguns and automatic weapons.

16. Property constituting evidence of the commission of the criminal offense of possession with intent to distribute controlled substances, contraband, and property designed and intended for use as the means for committing the criminal offense of possession with intent to distribute a

2

schedule I controlled substance, as well as paraphernalia used to prepare controlled substances for distribution and personal use.

Based upon my training, experience, and participation in this and other drug trafficking investigations, I have reason to believe that:

a) drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies;

b) drug traffickers often place assets in names of business/corporate entities as nominee title holders in order to avoid detection of these assets by government and law enforcement agencies; even though these assets are placed in the names of other persons or entities, the drug traffickers continue to use these assets and exercise dominion and control over them;

c) drug traffickers must maintain and/or have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business;

d) drug traffickers often maintain in their residences and/or business establishment records relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed including some or all of the following: electronically stored data, computerized or written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers;

e) drug traffickers commonly provide drugs on consignment sale to their customers, who subsequently pay for the drugs after reselling said drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses for their ready access to them

for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

f) drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

g) drug traffickers commonly will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts);

h) persons involved in drug trafficking who are aware of a criminal investigation into their financial drug activities, commonly will conceal, liquidate and transfer easily movable drug- derived assets in order to prevent law enforcement agencies from seizing and forfeiting these assets;

i) drug traffickers often have photographs or video movies of themselves, their co-conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug traffickers possession, their residence and/or their place of business;

j) drug traffickers' methods of transporting drugs include but are not limited to: commercial airlines, private motor vehicles, and government and contract mail carriers. I know that the vehicles, residences, or business locations of drug traffickers will often contain records of drug-related travel. These records may include airline ticket receipts, credit card receipts, rental car receipts and luggage tags reflecting points of travel;

4

k) drug traffickers commonly have firearms in their possession (on their person, at their residence, and/or their business) including but not limited to handguns, rifles, shotguns and automatic weapons. These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property or manufacturing operation;

l) it is common for drug traffickers to secrete in their vehicles items identified in the above paragraphs;

m) drug traffickers will often accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs;

n) drug traffickers commonly will maintain residence(s) separate from their primary residence to serve as "safe houses" where the traffickers may stay for periods of time; I know that these residences which may be occupied by other conspirators or associates may contain evidence of the trafficker's drug crimes to include all items noted above;

o) drug traffickers commonly have evidence of purchases of goods used in the manufacture of controlled substances secreted in their residences, businesses, or vehicles;

p) drug traffickers commonly communicate with each other using pager devices and cell phones, and they commonly maintain those items in their vehicles or homes;

q) drug traffickers commonly secrete in their residences vehicles and/or places of business, over a period of years, items such as those identified in the above paragraphs.

# Attachment A

## Location(s) To Be Searched

### Subject Residence

**The outbuilding on the property of 8505 Dunhill Ave. SW., Albuquerque, New Mexico 87121.** The outbuilding to be searched is a single structure located on the property of 8505 Dunhill Ave. SW. The exterior of the building is a gray with gray shingles. The door to the outbuilding faces south.